**O**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEONTE NASH,<br><br>          Plaintiff,<br><br>    v.<br><br><br>SEAN COMBS; 207 ANDERSON LLC; BAD BOY ENTERTAINMENT, LLC; CE OPCO, LLC; JANICE COMBS PUBLISHING, LLC; and BAD BOY ENTERTAINMENT HOLDINGS, LLC,<br><br>          Defendants. | Case No.: 2:25-cv-11033-MEMF-PVC<br><br>**ORDER DENYING CORPORATE DEFENDANTS' MOTION TO DISMISS COMPLAINT [DKT. NO. 25] AND DENYING COMBS' MOTION TO DISMISS COMPLAINT [DKT. NO. 28]** |

## I.  **Introduction**

Before this Court are two Motions to Dismiss. The first was filed by Defendants CE Opco, LLC; 207 Anderson LLC; Bad Boy Entertainment LLC; Bad Boy Entertainment Holdings, Inc.; and Janice Combs Publishing, LLC (collectively, the "Corporate Defendants"). Dkt. No. 25. The second was filed by Defendant Sean Combs. Dkt. No. 28. For the reasons below, the Motions are DENIED.

/ / /

1

## II.  Factual Background

The following factual background is derived from the allegations in Nash's Complaint. Dkt. No. 1-2 ("Compl."). For the purposes of this Motion, the Court treats these factual allegations as true. But at this stage, the Court makes no finding on the truth of these allegations and is therefore not—at this stage—finding that they *are* true.

### A.  The Parties

#### 1.  Plaintiff

Plaintiff Deonte Nash is a resident of California. Dkt. No. 1-2 ¶ 6 ("Compl."). Nash is an African American man who identifies as gay. *Id.* ¶ 34. He works as a stylist and creative director in the entertainment industry. *Id.* From 2007 to 2018, Nash was employed by all Defendants. *Id.* ¶ 6.

#### 2.  Defendants

Defendant Sean Combs is a resident of Florida. *Id.* ¶ 7. Combs is incarcerated in the Federal Detention Center in Brooklyn, New York. *Id.* He has been incarcerated there since September 2024. *Id.* Combs is a well-known and influential music producer. *Id.* ¶ 30. He founded and owns the Bad Boy Records label, and he controls several powerful entities in the entertainment industry. *Id.*

At all relevant times, Combs owned or controlled the Corporate Defendants. *Id.* ¶ 7. The Corporate Defendants are 207 Anderson LLC ("Anderson"); Bad Boy Entertainment LLC ("BBE"); Bad Boy Entertainment Holdings, Inc. ("BBEH"); Janice Combs Publishing, LLC ("JCP"); and CeOpco, LLC, d/b/a Combs Global, f/k/a Combs ("CeOpco").[1] *Id.* ¶ 18. The Corporate Defendants constituted parts of Combs Enterprises. *Id.* ¶ 7. The Corporate Defendants were Combs' alter egos. *Id.* ¶ 22.

### B.  Factual Allegations

When Nash was twenty-one years old, he began working as Defendants' stylist intern in 2008. *Id.* ¶ 36. He principally worked as a stylist Casandra Ventura, Defendants' employee and Combs' former girlfriend, with whom Nash developed a close relationship. *Id.* ¶ 36.

---

[1] On December 9, 2025, Nash filed a notice voluntarily dismissing Defendant Bad Boy Records LLC from this case. *See* Dkt. No. 24. Nash also alleges that Bad Boy Records LLC was a Combs alter ego. *See* Compl. ¶¶ 6–7. For the purposes of this Order, "Corporate Defendants" excludes Bad Boy Records LLC.

Combs exerted control over Nash personally and professionally. Nash was hired as an independent contractor, but was not allowed to work for other employers. *Id.* ¶¶ 37, 79. Combs controlled who, other than Defendants' associates, Nash could accept as clients. *Id.* ¶ 79, 82. Combs told Nash that Nash would have "problems" if he attempted to work for others in the entertainment industry. *Id.* ¶ 80. And, when Combs grew suspicious that Nash was working for employers other than Defendants, Combs would deliberately escalate his demands and assign Nash unnecessary work with the intent of consuming his time and energy. *Id.* ¶ 83. As a result, Nash feared seeking other opportunities, because if Combs discovered these efforts, Nash feared that Combs would retaliate by causing Nash physical and reputational harm. *Id.* ¶ 84. Moreover, Combs repeatedly hired others to follow Nash, would confiscate his phone and keys to prevent him from leaving, and threatened to harm Nash if he failed to tell Combs his location. *Id.* ¶¶ 86–88. Because Combs seemed to always able to locate Nash, Nash believed Combs was unlawfully tracking him. *Id.* ¶ 88. Nash also knew former employees of Combs who had suffered abuse and reputational harm at the hands of Combs, which left them unable to find employment; Nash feared—and still fears—the same fate. *Id.* ¶ 111.

From 2008 to 2018, while Nash worked for Combs, Combs repeatedly verbally degraded, sexually assaulted, and sexually harassed Nash. *Id.* ¶¶ 47, 55. Over that ten-year time frame, Defendants sexually, physically, mentally, and emotionally abused Nash. *Id.* ¶ 40. This abuse included "constant unreasonable demands and expectations, forced tests of loyalty and manipulation, sexual harassment and sexual assaults, physical violence and manhandling, labor trafficking, threats of harm, and threats of death." *Id.* Combs himself sexually assaulted Nash at least six times over the course of his employment. *Id.* ¶¶ 47–54. Combs also regularly made unwanted, inappropriate, sexually charged comments to Nash and Ventura, despite multiple requests that he stop. *Id.* ¶¶ 55–65. And Combs was physically violent with Nash and Ventura on several occasions. *Id.* ¶ 66; *see also id.* ¶¶ 68–77. Defendants' employees ordered Nash to clean up rooms where Combs had notorious coerced sexual encounters with others, and ordered him not to speak about what he had seen. *Id.* ¶ 104.

Due to his experiences and observations, Nash feared for his life. *Id.* ¶ 73. Combs bragged about violently retaliating against people that had turned against him in the past. *Id.* Moreover, Nash

frequently observed Combs' violent and unprovoked acts of aggression. *Id.* For example, Nash recalls Combs kicked the door of Ventura's home off its hinges on multiple occasions. *Id.* ¶ 74. And Combs routinely intimated to Nash that he had blown up another musician's car in February 2012. *Id.* ¶ 77. Based on this, Nash reasonably believed he would be no different—and that Combs would seriously hurt or kill him if Nash failed to follow Combs' orders. *Id.* ¶ 73.

Combs exercised control over Nash even after he stopped working for Defendants, including by making repeated threats. *Id.* ¶ 89. On January 3, 2019, Combs called Nash while Nash was with Ventura. *Id.* When Nash refused to put Ventura on the phone with Combs, Combs threatened to track Ventura's car and find their location. *Id.* On another occasion, Combs threatened to harm Nash's reputation and attempted to extort $50,000 from Nash and Ventura, falsely claiming they owed Combs the money. *Id.* ¶ 91. He also informed Nash and Ventura that Combs was having them followed and knew where they were. *Id.* ¶ 127. Combs also told Nash that Nash had to keep in contact with him, even following the end of their employment relationship, because Combs was "letting [Nash] live." *Id.* ¶ 114.

As a result of Combs' violence, threats, and intimidation toward Nash—as well as Nash's knowledge of Combs' violence and intimidation toward those who Combs perceived to be his enemies—Nash continues to live in fear. *Id.* ¶¶ 108–09, 111. In May 2025, Nash was served a subpoena and reluctantly compelled to testify at Combs' criminal trial. *Id.* ¶ 116. There, Nash testified against Combs on May 28 and 29, 2025. *Id.* He experienced substantial emotional distress at the prospect of testifying about Defendants' conduct. *See id.* It was only under a court order that Nash testified about some of Combs' abuse. *Id.* ¶ 118.

### C. **Procedural History**

On September 24, 2025, Nash filed his Complaint in Los Angeles Superior Court. *See generally* Compl. On November 17, 2025, Corporate Defendants removed the action to federal court. Dkt. No. 1.

In his Complaint, Nash alleges the following claims, each against all Defendants:

(1)     human trafficking, in violation of Cal. Civ. Code § 52.5;

(2)     assault;

(3)    battery;

(4)    sexual battery;

(5)    negligence;

(6)    intentional infliction of emotional distress;

(7)    negligent infliction of emotional distress;

(8)    false imprisonment;

(9)    gender violence, in violation of Cal. Civ. Code § 52.4;

(10)    sexual orientation violence, in violation of Cal. Civ. Code § 52.4; and

(11)    constructive discharge.

*See id.*

On January 8, 2026, Corporate Defendants filed a Motion to Dismiss. *See* Dkt. No. 25 ("Corp. MTD"). On January 22, 2026, Nash filed an Opposition. *See* Dkt. No. 29 ("Corp. Opp."). On February 10, 2026, the Corporate Defendants filed a Reply. *See* Dkt. No. 34 ("Corp. Reply").

On January 20, 2026, Defendant Sean Combs filed a Motion to Dismiss as well. *See generally* Dkt. No. 28 ("Combs MTD"). On February 3, 2026, Nash filed an Opposition. Dkt. No. 32 ("Combs Opp."). On February 10, 2026, Combs filed a Reply. Dkt No. 34 ("Combs Reply").

This Court held a hearing on both Motions on March 12, 2026.

### III. Applicable Law

Defendants bring their Motions to Dismiss pursuant to Rule 12(b)(6). Rule 12(b)(6) allows a party to seek to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Labels, conclusions, and "formulaic recitation of a cause of action's elements" are insufficient. *Twombly*, 550 U.S. at 545.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

5

*Iqbal*, 556 U.S. at 679.  Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff.  *Soo Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee*, 250 F.3d at 679.  But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In general, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint cannot be saved by amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.  **Discussion**

Defendants move to dismiss the case under Rule 12(b)(6) on three primary grounds. First, all Defendants—Combs and the Corporate Defendants—argue that the statute of limitations has expired, and therefore dismissal is warranted, for all but one of Nash's claims. *See* Combs MTD at 3–9; Corp. MTD at 3–10. Second, the Corporate Defendants argue that they should be dismissed from the complaint because they are not vicariously liable, the Complaint engages in impermissible group pleading, and Anderson is an improper defendant as it is a dissolved limited liability corporation. *See* Corp. MTD at 10–13. Third, all Defendants argue that the Complaint fails to state a claim against any Defendant for constructive discharge. *See id.* at 13–15; Combs MTD at 10.

For the reasons below, this Court concludes as follows. First, dismissal is not warranted based on the statute of limitations, because the claims with expired statutes of limitations are revivable at this stage under the doctrine of equitable estoppel. Second, dismissal of the claims against the Corporate Defendants is not warranted because the Complaint sufficiently states vicarious liability, does not engage in impermissible group pleading, and Nash may be able seek recovery from Anderson. And, third, the Complaint sufficiently states a claim against Defendants for constructive discharge.

In sum, both Motions are denied.

### A.  **The Court will not dismiss Nash's claims based upon the statute of limitations.**

The two Motions both make two assertions regarding the applicable statutes of limitations. First, all Defendants assert that it is not clear whether the statute of limitations has lapsed on Nash's

human trafficking claim, and as a result, this Court should either dismiss the claim or require a more definite statement from Nash regarding this claim. Second, all Defendants assert that the statute of limitations has lapsed for all of Nash's other claims, and that the claims cannot be saved through the doctrine of equitable tolling or California's Sexual Abuse and Cover Up Accountability Act.[2] Cal. Civ. Proc. Code § 340.16. The Court addresses each argument in turn.

1. Nash sufficiently pleads a human trafficking claim,[3] and Defendants are not entitled to a more definite statement.

First, Defendants contend that it is not clear from the Complaint whether the statute of limitations has lapsed for Nash's statute of limitations claim, but that this Court should infer that it has and dismiss the claim—or, in the alternative, order Nash to plead a more definite statement such that Defendants can ascertain whether the claim is time-barred. Corp. MTD at 3–6; Combs MTD at 3–6. For the reasons below, neither dismissal nor ordering a more definite statement is warranted.

"A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, *read with the required liberality,* would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206–07 (9th Cir. 1995) (emphasis added) (quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)). "In fact, a complaint cannot be dismissed unless it appears *beyond doubt* that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207 (emphasis added).

---

[2] At the hearing, Defendants argued that, because Cal. Civ. Proc. Code § 340.16 does not statutorily revive the claims, this Court should not exercise equitable estoppel over the claims. But, as Nash clarified at the hearing, the arguments for statutory revival and equitable estoppel are independent, as equitable estoppel is a judicial doctrine with a different standard. Nor do Defendants cite any authority for the proposition that the statutory revival provisions of California law purport to limit the judicial exercise of equitable estoppel.

[3] At the hearing, the parties discussed whether the Complaint plausibly alleged allegations sustaining a human trafficking claim. Defendants argued that the tasks that Nash alleged that he was required or threatened to perform during and after his employment, even taken as true, do not plausibly allege a claim of human trafficking. This argument was not raised in the briefing, so this Order does not address it. This is without prejudice to the parties revisiting this argument at a future stage of litigation.

A seven-year statute of limitations governs Nash's human trafficking claim. *See* Cal. Civ. Code § 52.5(c). On this, the parties appear to agree. *See* Corp. MTD at 4; Corp. Opp. at 11. And Nash filed the Complaint on September 24, 2025. Compl. at 1. Defendants note that, per the Complaint, "Plaintiff's employment ended in 2018, which is when the alleged trafficking ended," but that "the Complaint is silent on the date *when* Plaintiff's employment ended." Corp. MTD at 6. They argue that this is essential because, if Nash's employment ended earlier than September 24, 2018, the claims are time-barred. In Opposition, Nash argues that it is inappropriate to dismiss a claim at this stage, as Defendants have not shown that no set of facts would establish the timeliness of Nash's claim. Corp. Opp. at 11. Nash also notes that his pleadings plausibly allege that the human trafficking continued even after his employment ended in 2018, so the date of his employment's termination is irrelevant. *Id.*

Applying the *Supermail* standard, dismissal is not proper. In fact, Defendants acknowledge that there is some set of facts consistent with the Complaint under which Nash's claim is timely. *See* Corp. Motion at 6. For example, if Nash's termination took place any time after September 24, 2018—or if any human trafficking took place after that date—the claim would be timely. Neither theory is inconsistent with the pleadings. Moreover, Defendants appear to disregard the allegation that the human trafficking endured even after Nash stopped working for Defendants. *See* Corp. Reply at 3–4; *see also* Compl. ¶ 137 ("*Even after Plaintiff's employment ended in 2018*, Defendants continued to use threats to deprive Plaintiff of his liberty and force Plaintiff to continue to do Defendants' bidding. Defendants' threats caused significant duress and forced Plaintiff into hiding for days at a time on several occasions." (emphasis added)). To that end, whether Nash's employment ended at the beginning or end of 2018 does not determine whether Nash sufficiently states a claim.

In the Motion, Corporate Defendants ask this Court to infer that Nash's claim is untimely because the human trafficking claim is mentioned in the section of the Complaint that alleges that

equitable tolling applies. Corp. MTD at 6. But such an inference would run counter to the *Supermail* Court's directive that dismissal on statute of limitations grounds is only appropriate *when no set of facts* would establish the timeliness of Nash's claim. In Reply, the Corporate Defendants appear to concede this. *See* Corp. Reply at 3–4 ("While *a plausible reading* of the Complaint is that the claim is untimely because the Complaint includes it in its request for equitable tolling . . . . " (emphasis added)). Whether Nash argued that other doctrines would save his human trafficking claim even if the statute of limitations had expired, for this purpose, is not relevant. Nor would ruling on this basis be consistent with granting Nash the benefit of reasonable inferences in his favor, as the non-moving party at this early stage. *Soo Park*, 851 F.3d at 918. So this Court declines to adopt that reasoning.

As an alternative argument, Defendants ask this Court to grant their request "for a more definite statement, requiring Plaintiff to clarify—by explicit allegations—when exactly Plaintiff's alleged employment ended." *Id.* at 4. "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Corporate Defendants note that some district courts have offered this relief "where clarification directly bears on the availability of a statute of limitations defense." *See* Corp. MTD at 7 (collecting cases). But Defendants have not shown, as they suggest, that this is a case where "clarification of an essential date can trigger a limitations defense." *Id.* Again, Nash argues—and Defendants do not appear to address, and therefore concede—that his human trafficking continued following 2018. *See* Compl. ¶ 137–38. So there is no indication that the date of his termination is "essential." *See* Corp. Opp. at 11. And, in any event, Defendants' request for a more definite statement is at odds with the language of Rule 12(e), which instructs courts to grant a more definite statement only when the statement is so vague that other parties cannot reasonably respond. Fed. R. Civ. P. 12(e). Whether Defendants can allege a statute of limitations defense appears to be a different question from whether they can reasonably respond to Nash's allegations.

In sum, dismissal for expiration of a statute of limitations is proper only where it appears that no set of facts that a plaintiff could prove would support a finding that the claim was timely. Defendants have not shown that to be the case here. For that reason, the Motions as to this argument are denied.

2.  <u>Though the statute of limitations for Nash's remaining claims has lapsed, Nash sufficiently states that equitable estoppel applies.</u>

Second, Defendants argue that—for all claims other than human trafficking—the statute of limitations has lapsed. Corp. MTD at 4–5; Combs MTD at 4–5. Nash does not contest Defendants' calculation of the statutes of limitations that generally apply to his causes of action, but argues that "Defendants are estopped from arguing the statute of limitations bars Nash's claims because Combs consistently exerted his extreme power to threaten and control Nash." Corp. Opp. at 14. For the reasons below, the Complaint sufficiently alleges that equitable estoppel applies, so dismissal is not warranted.[4]

"[T]here are two doctrines which may apply to extend the limitations period or preclude a defendant from asserting the defense—equitable tolling and equitable estoppel." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008); *see also Lantzy v. Centex Homes*, 73 P.3d 517, 532–33 (Cal. 2003). The doctrine of equitable tolling "focuses on whether there was excusable delay by the plaintiff: 'If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000)). "Equitable estoppel, on the other hand, 'focuses primarily on the actions taken

---

[4] As a federal court sitting in diversity, this Court applies California law to discern the applicable statutes of limitations and determine whether equitable tolling or estoppel apply. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir.), *certifying questions to*, 254 P.3d 360 (Ariz. 2011); *see also In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017).

by the *defendant* in preventing a plaintiff from filing suit.'" *Id.* (quoting *Santa Maria*, 202 F.3d at 1176). It may come into play "if the defendant takes active steps to prevent the plaintiff from suing in time." *Id.* "Because the applicability of the equitable tolling doctrine often depends on matters outside the pleadings, it 'is not generally amenable to resolution on a Rule 12(b)(6) motion.'" *Supermail Cargo, Inc.*, 68 F.3d at 1206 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993)). The Ninth Circuit has reversed dismissals where the application of the equitable tolling doctrine "depended upon factual questions not clearly resolved in the pleadings." *Id.* at 1207 (collecting cases).

Per the Complaint, "[t]o the extent defendants assert an affirmative defense of limitations . . . , Mr. Nash invokes the equitable tolling and equitable estoppel doctrines." Compl. ¶ 126. For the reasons below, the Complaint does not plausibly allege facts to support the application of equitable tolling—but it *does* plausibly allege facts to support the application of equitable estoppel. To that end, dismissal is not warranted.

*a.  Equitable tolling does not apply.*

First, at issue is whether the Complaint sufficiently supports a finding that equitable tolling could render Nash's claims timely where the statutes of limitations have expired. For the reasons below, it does not.

"Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the period may be suspended . . . ." *Lantzy v. Centex Homes*, 73 P.3d 517, 532 (Cal. 2003), *as modified* (Aug. 27, 2003) (citing *Battuello v. Battuello*, 75 Cal. Rptr. 2d 548, 551 (Ct. App. 1998)). The equitable tolling doctrine "evolved from three lines of California cases, each relieving plaintiffs of the duty to abide by the statute of limitations." *St. Francis Mem'l Hosp. v. State Dep't of Pub. Health,* 467 P.3d 1033, 1042 (Cal. 2020) (quoting *Addison v. California,* 578 P.2d 941, 943 (Cal. 1978)). These lines of cases include cases "when a plaintiff was already involved in one lawsuit, and filed a subsequent case that could

lessen the damage or harm that would otherwise have to be remedied"; when "a plaintiff was required to pursue, and did indeed pursue, an administrative remedy before filing a civil action"; and to "serve the ends of justice where technical forfeitures would unjustifiably prevent a trial on the merits." *Id.* at 319. To this end, the application of the doctrine of equitable tolling requires three elements: (1) timely notice, (2) lack of prejudice, to the defendant, (3) reasonable and good faith conduct on the part of the plaintiff." *Addison,* 578 P.2d at 943. The party invoking the equitable tolling doctrine bears the burden of proving that the doctrine's requirements are met. *Feliz v. County of Orange*, 308 Cal. Rptr. 3d 731, 741 (Ct. App. 2023).

Defendants argue that Nash makes insufficient allegations to support the finding that equitable tolling applies. They note that Nash alleges no prior claims against Defendants, nor does the Complaint substantiate why Defendants are not prejudiced by Nash's untimely claim. Corp. MTD at 8–9. In Opposition, Nash does not argue that he has made such a showing; instead, he notes that Defendants' argument "fails to realize that equitable tolling can exist for reasons other than pursuing an alternate legal claim or remedy." Corp. Opp. at 14. But Nash does not make a showing that the elements of equitable tolling are met. To that end, Nash's Complaint does not plead sufficient facts to find that equitable tolling may apply. Nash appears to concede that he has not met the traditional elements required for equitable tolling, instead characterizing his claim as falling under the doctrine of equitable estoppel. Corp. Opp. at 14.

In sum, the Complaint does not plausibly allege giving Defendants timely notice of the claims, nor does it explain why Defendants would not be prejudiced by the untimely claims. Corp. MTD at 8–9. For that reason, the equitable tolling doctrine does not apply.

> *b.  Equitable estoppel applies.*

Next at issue is whether the Complaint sufficiently alleges that the equitable estoppel

doctrine allows Nash to bring otherwise untimely claims.[5] For the reasons below, this Court finds that it does.

Equitable estoppel applies when a party advances a statute of limitations defense, despite the fact that "his conduct has induced another into forbearing suit within the applicable limitations period." *Lantzy,* 73 P.3d at 532–33. Since "the delay in commencing action is induced by the conduct of the defendant, it cannot be availed of by him as a defense." *Id.* at 384 (quoting *Vu v. Prudential Prop. & Cas. Ins. Co.,* 33 P.3d 487, 493 (Cal. 2001)). "To create an equitable estoppel, 'it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.'" *Id.* (quoting *Vu,* 33 P.3d 487 at 493). Under California law, equitable estoppel generally has four elements: "(1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury." *Honig v. S.F. Plan. Dep't*, 25 Cal. Rptr. 3d 649, 655 (Ct. App. 2005). And, in the context of sexual abuse, the California Supreme Court, sitting in bank, has held that the facts relevant to a determination of equitable estoppel are as follows: (1) whether any threats were in fact made . . . , (2) when the effect of any such threats ceased, [and] (3) whether plaintiffs acted within a reasonable time after the coercive effect of the threats had ended. *John R. v. Oakland Unified Sch. Dist.*, 769 P.2d 948, 952 (1989) (applying the equitable estoppel doctrine where an agent of the defendant— one of the plaintiff's teachers—threatened to retaliate against the plaintiff if he reported incidents of sexual assault). *See also Ortega v. Pajaro Valley Unified Sch. Dist.*, 75 Cal. Rptr. 2d 777, 790 (Ct. App. 1998), *as modified on denial of reh'g* (July 10, 1998)).

---

[5] Corporate Defendants suggest that this Court should not consider Nash's equitable estoppel theory because it was "newly raised" in Opposition. Corp. Reply at 1. But, even if Corporate Defendants cited authority to suggest that an action must explicitly allege equitable estoppel as an anticipated defense in the complaint to prevail, Nash's Complaint did so. *See* Compl. ¶ 126.

Moreover, courts applying California law regularly apply a form of equitable estoppel, "estoppel by duress," in sexual assault cases. *E.g.*, *Doe v. Cnty. of Plumas,* No. 2:24-CV-02640, 2025 WL 2381815, at *5 (E.D. Cal. Aug. 15, 2025); *Ortega v. Pajaro Valley Unified Sch. Dist.,* 75 Cal. Rptr. 2d 777, 796 (Ct. App. 1998); *Bianco v. Warner,* No. 2:21-cv-03677, 2021 WL 5115201, at *8 (C.D. Cal. Sep. 2, 2021). This is consistent with the California Supreme Court's conclusion that equitable estoppel could prevent dismissal of a claim where plaintiff plausibly alleged that the defendant's wrongdoing prevented him from filing his claim. "Assuming plaintiffs can establish their case, it would plainly be inequitable to permit [a defendant] to escape liability only because [the defendant's agent's] threats succeeded in preventing [the] victim from disclosing the molestation until the time for filing a claim against the [defendant] had elapsed." *John R.*, 769 P.2d at 952.

Under California law, Nash's allegations support the application of equitable estoppel, as both elements of estoppel by duress are met. First, Nash plausibly alleges that Defendants' unconscionable acts—including threatened and actual violence, intimidation, and coercion—deterred him from filing a claim. Defendants do not appear to contest that Nash's claims satisfy the first prong of estoppel by duress. *See* Corp. Reply at 9. Nash alleges that he was "under the coercion and control of Combs starting in 2008 and continuing even after his employment ended in 2018." *Id.* ¶ 126. He supports this conclusion by alleging that Combs made credible threats to Nash's life, and forced Nash to pass on threats to Ventura, through 2022. *Id.* ¶ 127. And Nash alleges that Combs forced Nash to comply with his orders, had him followed, and suggested that Nash was only alive because Combs was permitting it. *Id.* ¶¶ 126–29. This Court understands Nash to have been deterred from filing this action until the point at which he was compelled to testify about his experience under subpoena in May 2025. *Id.* ¶¶ 116, 129. Even now, Nash explains that he is terrified of Defendants and fears for his life. *Id.* ¶¶ 127, 129. These allegations support the application of equitable estoppel.

Second, Nash's allegations, taken as true, show that he filed the claim within a reasonable time after the effects of the acts ended. Taking the allegations as true, Nash is still under the effects of the intimidating acts that dissuaded him from bringing this claim. *Id.* Only after May 29, 2025, does it appear that Nash became willing to bring the instant action—which he initiated on September

24, 2025. This Court therefore understands the elapsed time between the effect of Defendants' coercion and Nash's initiation of this action to be less than four months. That length of time does not appear excessive, unreasonable, or prejudicial to Defendants.[6]

Defendants' arguments to the contrary are not persuasive. In Reply, Combs asks this Court should rule that equitable estoppel is inapplicable as a matter of law because "the evidence is not in conflict and is susceptible of only one reasonable inference." Combs Reply at 9 (citing *Doe v. Marten*, 263 Cal. Rptr. 3d 547, 552 (Ct. App. 2020)). He argues that this is so for two reasons: because Nash testified against Combs, and because Combs is now incarcerated. *See id.* at 9–10. Neither basis is persuasive.

First, Combs posits that Nash's allegations "do[] not square with the fact that Plaintiff testified at Mr. Combs' criminal trial in New York and has now filed claims against him." *Id.* at 9–10. But this ignores the Complaint's allegations that Nash testified only because he was compelled to do so under subpoena. Compl. ¶ 116. Nash alleges that he did not testify voluntarily—and, in fact, that he had a nervous breakdown upon receipt of the subpoena because of his fear of discussing his experiences and observations of combs. *Id.* Though Combs may argue that Nash's fear was not reasonable, questions of fact and credibility are central to that determination. To that end, Combs' argument does not warrant dismissal.

Second, Combs argues that Nash's allegations of fear are implausible given that Combs has been arrested, convicted, and imprisoned. Combs Reply at 9. Again, this does not address the Complaint's allegations that Nash "is still living in fear that Combs, through Defendants and his agents, will harm him." Compl. ¶ 116. Nash alleges that, "[d]espite Combs being in federal custody, Mr. Nash still lives in a constant state of fear and anxiety." *Id.* ¶ 117. "Even though Combs is currently incarcerated, he is still a powerful man," and Nash believes that Combs "still has people on the outside that are very capable and willing to do his bidding." *Id.* ¶ 119. This Court must, at this

---

[6] It bears mention that California Courts of Appeal have acknowledged that an abuser's threats can have a deterrent effect long after they end and that an abuser's threats need not even be physical in nature. *Doe v. Bakersfield City Sch. Dist.*, 39 Cal. Rptr. 3d 79, 91 (Ct. App. 2006)). And, as the Complaint alleges, such a risk is particularly salient where a defendant abuses their power over a plaintiff employee. *See* Compl. ¶ 40.

stage, take Nash's well-pleaded allegations as true; to the extent that Combs wishes to contest the truth of the allegations, the challenge is best resolved at summary judgment or at trial.

Nor is the fact that Nash filed this action dispositive evidence that Nash did not previously fear filing this action. Were this Court to adopt Combs' proposed reasoning, it would turn the equitable estoppel doctrine on its head—no plaintiff could ever claim its protections because a defendant could always assert that the filing of the lawsuit is dispositive evidence of the absence of fear. This Court declines to adopt that reasoning. Combs' argument that the allegations only support an inference that equitable estoppel does not apply, therefore, is unavailing. It appears evident from the Complaint that questions of fact and credibility are central to determining whether Nash did, in fact, initiate this action within a reasonable time frame after Combs' threats ended. Therefore, the question is not properly resolved by this Court at this stage.

Combs also argues that equitable estoppel does not apply because "no allegations are made that Mr. Combs threatened to retaliate against Plaintiff if he *filed claims* against him." Combs Reply at 10 (emphasis added). That is not the standard. In fact, the California Supreme Court has rejected the theory that equitable estoppel only applies when the plaintiff does not establish that the defendant specifically intended to deter *legal action*. *John R.*, 769 P.2d at 951 ("Although the teacher's alleged threats in this case were no doubt motivated largely by self-interest, rather than to prevent John from filing a claim against the district, it would clearly be inconsistent with the equitable underpinnings of the estoppel doctrine to permit the district to benefit to plaintiffs' detriment by such threats."). There, the threats had been that defendant's agent would "retaliate against [plaintiff] if he revealed what had taken place" to plaintiff's parents. *Id.* at 949. No specific mentions dissuading legal action were made. *Id.* Still, the California Supreme Court had "no hesitation in concluding that" the agent's threats were relevant the question of equitable estoppel. *Id.* at 952.

Corporate Defendants, in Reply, argue that they are not vicariously liable for Combs' alleged conduct. This, they reason, means that—even if equitable estoppel allows to permit the claims against Combs to proceed—Nash cannot bring his untimely claims against Corporate Defendants. Reply at 9. This Court addresses Corporate Defendants' vicarious liability below. But, for the

reasons explained more thoroughly in the following section, Nash has sufficiently pleaded an alter ego theory of liability against the Corporate Defendants—and, if shown to be true, Corporate Defendants may be liable for Combs' conduct as Combs' alter egos. For that reason, Combs' alleged conduct permits equitable estoppel for the claims as to all Defendants.

In sum, the Complaint's allegations support the application of equitable estoppel to Nash's otherwise-untimely claims against Combs, and to the otherwise-untimely claims against Corporate Defendants. For that reason, the Motions as to this basis are denied.[7]

**B. Nash sufficiently states a claim against the Corporate Defendants.**

Next, the Corporate Defendants argue that Nash cannot bring claims against Anderson, and that Nash's claims against Corporate Defendants fail generally because Nash does not properly allege vicarious liability or for alter ego liability. The Court addresses each argument in turn.

1.  Plaintiff can pursue claims against Anderson.

First, at issue is whether Plaintiff can sue Anderson, which Corporate Defendants argue is a now-defunct LLC. For the reasons below, Corporate Defendants have not demonstrated that dismissal is proper.

Nash argues that suing a dissolved company is permissible to the extent that Anderson has not disbursed its assets. Corp. Opp. at 22–23. Corporate Defendants argue Anderson cannot be sued as the company has been dissolved. *See* Declaration of Lilah N. Cook, Dkt. No. 25-2 ("Cook Decl."), Ex. A (purportedly a certificate showing the "termination/dissolution" of Anderson). They argue that, as Anderson has owned no assets since 2021, dismissal is proper. Corp. MTD at 11. Because there is no evidence properly before this Court that all of Anderson's assets have been disbursed, Corporate Defendants have not shown why Nash cannot pursue a claim against Anderson.

California Corporations Code states that "[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and

---

[7] As an independent basis for the claims that have expired statutes of limitations, the parties dispute whether Cal. Civ. Proc. Code § 340.16 revives all or only some of Nash's claims. Because this Court finds that Nash has plausibly alleged that equitable estoppel applies, this Court need not reach that question at this time.

collect and divide its assets. . . ." Cal. Corp. Code § 2010. Thus, Anderson still exists to wind up its affairs and can still have action brought against it. Additionally, under California law, "causes of action against a dissolved limited liability company. . . may be enforced against. . . the dissolved limited liability company to the extent of its undistributed assets. . . ." Cal. Corp. Code § 17707.07. This allows for Nash to pursue actions against a dissolved company, to the extent that it has undistributed assets.

Corporate Defendants have not shown that this does not apply. Although Corporate Defendants assert that "[i]n 2021, 207 Anderson's sole asset, a house, was distributed to a third party," they offer no proof in support. *See* Corp. MTD at 11. Though they have provided what is purportedly Anderson's certificate of dissolution, they do not explain why it is appropriate for this Court to take judicial notice of a material beyond the pleadings. *Id.* Nor can a Court "take judicial notice of a fact that is 'subject to reasonable dispute.'" 250 F.3d 668, 689 (9th Cir. 2001) (quoting Fed. R. Evid. 201(b)). And, separately, Corporate Defendants do not address Nash's contention that California law contemplates that a plaintiff may bring a claim against a dissolved corporate defendant to the extent that the dissolved corporation retains assets. For all these reasons, it would be inappropriate for this Court to dismiss the motion against Anderson on this posture.

In sum, because Corporate Defendants do not sufficiently show that no claims can be brought against Anderson, their Motion as to this basis is denied.

> 2. <u>The Complaint states a claim for alter ego liability against the Corporate Defendants.</u>

Next, the parties dispute whether the Corporate Defendants can be properly sued for Combs' actions. Nash invokes the doctrine of alter ego liability and vicarious liability in support of the conclusion that the Complaint sufficiently alleges the Corporate Defendants' liability. For the reasons below, both theories are sufficiently pleaded.

> a. *The Complaint sufficiently alleges alter ego liability.*

"In California, two conditions must be met before the alter ego doctrine will be invoked. First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.

Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Ct.*, 99 Cal. Rptr. 2d 824, 836 (Ct. App. 2000). While no one characteristic governs, courts consider the following factors when making an alter ego determination: "(1) commingling of funds and other assets; (2) the holding out by one entity that it is liable for the debts of the other; (3) identical equitable ownership of the two entities; (4) use of the same offices and employees; (5) use of one as a mere shell or conduit for the affairs of the other; (6) inadequate capitalization; (7) disregard of corporate formalities; (8) lack of segregation of corporate records; and (9) identical directors and officers." *Id.* at 837. But no single factor is determinative. *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 121 Cal. Rptr. 2d 1 (Ct. App. 2002), *as modified on denial of reh'g* (June 10, 2002).

As this case law makes clear, the alter ego doctrine is an equitable one, its application relies on the unique circumstances of each case, and therefore "[w]hether the evidence has established that the corporate veil should be ignored is primarily a question of fact." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 159 Cal. Rptr. 3d 469, 480 (Ct. App. 2013); *see also id.* ("Because it is founded on equitable principles, application of the alter ego "is not made to depend upon prior decisions involving factual situations which appear to be similar.... 'It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case.'" (quoting *McLaughlin v. L. Bloom Sons Co.*, 24 Cal. Rptr. 311, 314 (Ct. App. 1962)).

Corporate Defendants characterize Nash's Complaint as "merely alleg[ing] the *conclusion* that the Corporate Defendants are Mr. Combs' alter[] egos." Corp. MTD at 12 (citing *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). But Nash's Complaint sufficiently states facts in support of the conclusion that the Corporate Defendants are Combs' alter egos. Compl. ¶ 7(a). He explains that the Corporate Defendants "are controlled and/or directed by Combs, and/or were established or used by Combs for the purpose of moving, disposing of, and/or insulating his assets, including in connection with his criminal and civil liability and to avoid liability." *Id.* ¶ 19. For example, "[o]n two occasions, Defendants' employees ordered Mr. Nash to clean up 'freak off' rooms were Combs had notorious coerced sexual encounters with others," and Defendants' employees instructed Nash not to talk about these incidents. *Id.* ¶ 104.

Taking Combs' well-pleaded allegations as true, then, Corporate Defendants were owned and controlled by Combs, they existed to hide Combs' assets and avoid liability, and they used their employees to cover up Combs' unlawful acts.

Based on these allegations—and assuming them to be true at this stage—Defendants have not shown that the claims for alter ego liability fail as a matter of law. In particular, Nash's allegations appear to address at least the third, fourth, fifth, and ninth factors discussed in *Virtualmagic Asia*: the Complaint alleges that Combs and the Corporate Defendants share common employees, that Combs owns and manages the Corporate Defendants, and that the Corporate Defendants have Combs as a common officer.[8] And, again, the factors are only meant to be instructive, not dispositive, as to the ultimate issue of alter ego liability. Nor have Corporate Defendants offered authority to support the idea that a pleading fails where it does not specifically allege more than what Nash has alleged here. In sum, then, Corporate Defendants have not shown that the allegations, even if found to be true, insufficiently state a claim for alter ego liability.[9]

Corporate Defendants' sole supporting case does not persuade this Court otherwise. While Corporate Defendants correctly note the legal requirements to establish an alter ego relationship, they do not address the question in the context of a motion to dismiss, nor do they appear to opine on what constitutes sufficient pleading of an alter ego relationship. *See Sec. & Exch. Comm'n v. Hickey*, 322 F.3d 1123, 1127 (9th Cir.), *opinion amended on denial of reh'g, Sec. & Exch. Comm'n v. Hickey*, 335 F.3d 834 (9th Cir. 2003) (addressing whether "a court may freeze assets of a nonparty to effectuate relief granted in a securities fraud enforcement action"). It appears to this Court that the nonconclusory factual allegations of the Complaint—if true—plausibly support a finding that Corporate Defendants were Combs' alter egos under California law. And the Complaint appears consistent with Rule 8's requirement of "a short and plain statement of the claim showing that the

---

[8] At the hearing, Defendants conceded that Nash had pleaded some of these elements.

[9] The Corporate Defendants argue that the Complaint tries and fails to treat the Corporate Defendants as a single enterprise. But this does not appear to be the case. Even if it were, the Court would reach the same conclusion as "[i]n California, common principles apply regardless of whether the alleged alter ego is based on piercing the corporate veil to attach liability to a shareholder or to hold a corporation liable as part of a single enterprise." *Toho-Towa Co.*, 159 Cal. Rptr. 3d at 480.

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Put another way, Corporate Defendnats have "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

> b. *The Complaint sufficiently alleges a theory of vicarious liability.*

Next, the parties dispute whether the Complaint sufficiently alleges a theory of vicarious liability such that Corporate Defendants could be held responsible for Combs' wrongful actions. For the reasons below, Corporate Defendants have not shown that the Complaint fails to state a claim for vicarious liability, so the Motion as to this basis is denied.

Under the doctrine of respondeat superior, "an employer is vicariously liable for his employee's torts committed within the scope of the employment." *John Y. v. Chaparral Treatment Ctr., Inc.*, 124 Cal. Rptr. 2d 330, 337 (Ct. App. 2002). And, just like the alter ego inquiry, unless the facts are not in dispute, "the determination whether an employee's acts are within the course and scope of employment is usually a question of fact." *Id.* Under California law, the scope of employment "has been broadly interpreted." *Id.* "Employer liability has been imposed when the employee was not pursuing the aim of the employment at the time of the tort, when the employee's acts were willful or malicious, and even when the acts were against the employer's rules or policies and conferred no benefit upon it." *Id.* (citing *Farmers Ins. Grp. v. Cnty. of Santa Clara*, 906 P.2d 440, 449 (Cal. 1995)).

Under this well-established case law, the Complaint's allegations plausibly support a finding of vicarious liability under respondeat superior. Nash alleges that Combs was, at all relevant times, "acting [within] the scope of the employment relationship as to all Defendants." Compl. ¶ 20. And the Complaint makes several allegations which support the assertion that Combs was acting within the scope of his employment by the Corporate Defendants when he committed the acts alleged. These include allegations that the corporate entities existed "*for the purpose of* moving, disposing of, and/or insulating [Combs's] assets, including in connection with his criminal and civil activities and to avoid liability." *Id.* ¶ 19. One specific example alleged of the nature of the Corporate Defendants' employment of Combs is that the Corporate Defendants' employees directed Nash to clean up rooms

where Combs had coerced sexual encounters and instructed Nash not to speak about the incident. *Id.* ¶ 104. Taking the allegations as true and construing them in Nash's favor, one significant purpose of the Corporate Defendants' enterprise was expressly to shield Combs' assets, hide his crimes, and minimize his liability. If that is the case, it would stand to reason that Combs' alleged misconduct was within the scope of his employment by these Corporate Defendants and the Corporate Defendants are responsible for his misconduct.

Corporate Defendants make two arguments in support of the contention that "the threadbare allegations the complaint cannot sustain finding [them] liable for Mr. Combs' alleged misconduct." Corp. MTD at 11. This Court addresses both arguments below.

First, Corporate Defendants allege that the Corporate Defendants are "entertainment related businesses," except for Anderson, which is now dissolved. *Id.* They reason that, because vicarious liability turns in part on whether the risk was "typical to the enterprise undertaken by the employer," Nash's invocation of vicarious liability necessarily fails because the acts alleged by Combs were not typical to an entertainment business. *Id.*; *see also* Corp. Reply at 14 (citing *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1344 (Cal. 1991)). This misses the point: the fact that they were entertainment related businesses does not mean they did not exist to shield Combs' activities within in the entertainment industry; moreover, Nash alleges that most, if not, all of these acts, occurred within the scope of entertainment-related events and activities, such as industry parties. CITE. So this argument does not support dismissal.

Second, Corporate Defendants argue that that the Complaint fails to allege "what, if any, day-to-day role Mr. Combs assumed in each business such that the degree of his involvement or actual employment could be inferred." Corp. MTD at 11. Again, they cite no authority in support of the contention that this is required at the pleadings stage. And, as this Court has already explained, the Complaint sufficiently alleges that Combs controlled and owned the Corporate Defendants, and discusses in detail the allegations of Combs' unlawful actions toward Nash.

In sum, Corporate Defendants' argument that vicarious liability is not sufficiently pleaded are not sufficiently supported, so this Court finds that dismissal is not warranted.

**C. Nash properly states a claim for constructive discharge.**

Both Combs and the Corporate Defendants argue that the Complaint fails to state a claim as to constructive discharge. They advance two arguments in support, which this Court addresses below.

First, Corporate Defendants argue that the Complaint only pleads that, of the Corporate Defendants, Anderson employed Plaintiff—a now-defunct LLC that was dissolved in 2021. Corp. MTD at 14. "Therefore, none of the Corporate Defendants were, or could have been, in an employment relationship with Plaintiff to allow a constructive discharge." *Id.* In Opposition, Nash argues that he has "sufficiently pled that he was not employed by any single Defendant entity, but received payment and performed tasks for each of them." Corp. Opp. at 21 (citing Compl. ¶ 6). And Nash's cited portion of the Complaint reads as follows:

> Plaintiff Deonte Nash is a resident of the State of California, County of Los Angeles, and, from 2007 to 2018, was employed by Defendants Sean Combs; 207 Anderson, LLC; Bad Boy Entertainment, LLC; Bad Boy Entertainment Holdings, Inc.; Bad Boy Records, LLC; Janice Combs Publishing, LLC; and Ce Opco, LLC d/b/a Combs Global, f/k/a Combs Enterprises, LLC and Does 1-25.

Compl. ¶ 6; *see also id.* ¶¶ 36–37; 78–79. This, on a plain read, plausibly alleges an employer–employee relationship between Nash and each of the Corporate Defendants. And, even if Anderson became defunct in 2021, that does not prevent it from having formed an employer–employee relationship with Nash—who alleges his employment with Defendants ended in 2018. To that end, Corporate Defendants' arguments as to this point are unavailing.

Second, both Corporate Defendants and Combs argue that Nash's claim is foreclosed under California law because he stayed in allegedly intolerable conditions for ten years. They argue that the fact that Nash admits he stayed in allegedly intolerable conditions for ten years makes his claim unreasonable, such that "California law does not permit a finding that Plaintiff's working conditions were intolerable." Combs MTD at 10; Corp. MTD at 14–15. In Opposition, Nash notes that

"[w]hether conditions were so intolerable or aggravated that a reasonable employer would realize that a reasonable person in the employee's position would be compelled to resign is usually a question of fact in a constructive discharge action." Corp. Opp. at 21 (citing *Scotch v. Art Inst. of Cal.*, 93 Cal. Rptr. 3d 338, 368 (Ct. App. 2009)).

The Corporate Defendants misstate California law when they assert that "[a]pplicable California law does not permit finding Plaintiff's working conditions were intolerable." Corp. MTD at 14. To the contrary. Although under California law, there is an outer limit "beyond which an employee cannot remain on the job after intolerable conditions arise and still claim constructive discharge," the California Supreme Court has made clear that the "length of time the plaintiff remained on the job may be *one* relevant factor in determining the intolerability of employment conditions from the standpoint of a reasonable person," And importantly, [n]either logic nor precedent suggests it should always be dispositive." *Id.* Accordingly, this Court does not find Defendants' arguments—that the "conditions could not have been intolerable by any reasonable standard applied by this Court," Corp. MTD at 15—consistent with the Complaint's allegations or sufficiently supported by law.

In sum, Nash has plausibly alleged an employer–employee relationship with all Defendants, and Defendants have not shown that his constructive discharge claim fails as a matter of law. Therefore, the Motions as to this basis are denied.

## V.  Conclusion

For the foregoing reasons, the Motions are DENIED.

IT IS SO ORDERED.

Dated:  May 26, 2026

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge